UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MAURICE OAKLEY CLAY,

               Plaintiff,

v.                                            Civil Action No. 2:04cv590

MIKE SALYER, sued in his
individual capacity,
ANN STOPHEL, sued in her
individual capacity,
DR. WRAY, sued in his
individual capacity,
DR. OHAI, sued in his
individual capacity, and
J.L. GOWAN, M.D., sued in his
individual and official capacity,

               Defendants.

## OPINION AND FINAL ORDER

Plaintiff Maurice Oakley Clay, a prisoner in the custody of the Virginia Department of Corrections, received a total hip replacement at taxpayer expense. He now brings this section 1983 action, *pro se*, seeking monetary damages on the ground that certain prison health professionals were deliberately indifferent to his serious medical condition during the two years preceding his surgery. Even when viewed in the light most favorable to plaintiff, his complaints amount to nothing more than claims of medical malpractice and/or negligence that do not rise to the level of a constitutional violation. Accordingly, the Court

**GRANTS** defendants' motions for summary judgment and **DENIES** plaintiff's cross-motion for summary judgment.

## I. Factual Allegations[1]

A.   Bristol City Jail

Plaintiff was arrested on August 17, 2001, for car jacking. While awaiting trial, he was incarcerated at Bristol City Jail in Bristol, Virginia.  Plaintiff claims that he sustained an injury to his groin area on October 20, 2001 while carrying a buffing machine down stairs at the jail.  The accident supposedly caused a sharp pain in the groin area of plaintiff's right leg. Plaintiff alleges that defendant Mike Salyer ("Salyer"), Medical Department Supervisor at Bristol City Jail, denied him medical care for many months and that Salyer provided plaintiff with Motrin only after several months had elapsed. [2]

B.   Washington County Jail

Plaintiff was convicted of car jacking on April 26, 2002, and sentenced to fifteen (15) years in prison.  Approximately two

---

[1]Because the Court grants defendants' motions for summary judgment, the Court will state the facts, and the inferences reasonably drawn from those facts, in the light most favorable to plaintiff, the nonmoving party with respect to those motions. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Smith v. Cont'l Cas. Co. 369 F.3d 412, 417 (4th Cir. 2004); Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995).

[2]As Salyer has been dismissed, the Court will not address these claims. See infra p. 7.

months later, he was transferred to Washington County Jail in
Abingdon, Virginia.  Plaintiff arrived at the jail without a
medical history report.  At the jail, defendant Ann Stophel
("Nurse Stophel"), a Licensed Practical Nurse, interviewed
plaintiff, who reported that he was on blood pressure medication
and Motrin for pain in his groin and hip areas.  Nurse Stophel
contacted Salyer at Bristol City Jail and confirmed plaintiff's
medications.  Salyer reported that he was unaware of any recent
injury to plaintiff, and informed Nurse Stophel that plaintiff
had been involved in a motor vehicle accident prior to
incarceration.  Nurse Stophel concluded that plaintiff's
complaints of pain stemmed from a preexisting injury, and that
plaintiff would have to pay for treatment of his condition.

     The jail's doctor, who is not a party to this action,
continued plaintiff on medication for his blood pressure and hip
pain.  After plaintiff requested to work in the kitchen, he was
tested for tuberculosis, and received negative results.
Accordingly, Nurse Stophel determined that plaintiff was in good
health and able to work as a kitchen trustee.

     Over the next several months, plaintiff did not file any
requests for medical treatment.  However, plaintiff suggests that
he saw Nurse Stophel often because he served meals to her and
other members of the staff.  Plaintiff avers that he mentioned to
Nurse Stophel on many occasions that his condition was worsening.
On October 23, 2002, plaintiff for the first time requested to

see the jail's doctor regarding his hip and throat.  A doctor
examined plaintiff the same day and increased his pain
medication.  The doctor also ordered x-rays.

C.   <u>Mecklenburg Correctional Center</u>

On October 25, 2002, plaintiff was transferred to
Mecklenburg Correctional Center, in Boydton, Virginia.  The order
for x-rays prescribed by the Washington County Jail doctor was
sent with him.  On October 29, 2002, defendant Dr. Wray, the
physician at Mecklenburg Correctional Center, examined plaintiff.
Dr. Wray discontinued plaintiff's prescription for Motrin pending
blood work and lab results because Dr. Wray was concerned about
the long-term use of Motrin.  On November 5, 2002, Dr. Wray
ordered an x-ray of plaintiff's right hip, and prescribed
Darvocet for hip pain.  An x-ray of plaintiff's hip was performed
on December 3, 2002.  On December 10, 2002, Dr. Wray saw
plaintiff for a follow-up examination and ordered an orthopedic
consult.  Dr. Wray prescribed an injection of Depo-Medrol, a
steroid and anti-inflammatory  medication, which had to be
ordered from an outside pharmacy, because the infirmary did not
stock this medication.  On December 23, 2002, plaintiff received
an injection of Dep-Medrol.

As a result of Dr. Wray's order for an orthopedic consult,
Dr. Henceroth, an orthopedic surgeon, examined plaintiff on
January 14, 2003.  Dr. Henceroth prescribed Voltaren, a non-

steroid anti-inflammatory pain medication, two (2) times a day for fourteen (14) days, and prescribed a cane for plaintiff to use.[3]

On January 22, 2003, Dr. Wray renewed the prescription for Voltaren and ordered liver function tests.  On February 3, 2003, Dr. Wray reviewed the results of the liver function tests and ordered that those tests be repeated in one (1) month.   On February 24, Dr. Wray saw plaintiff for complaints of hip pain. Dr. Wray increased plaintiff's dosage of Voltaren from 75 mg to 100 mg, twice a day for fourteen (14) days.

Dr. Wray examined plaintiff again on March 10, 2003. Plaintiff reported pain in his pubis upon raising his right leg. A second orthopedic consult was ordered.  Dr. Wray renewed plaintiff's prescription for Voltaren at 75 mg twice a day.

On April 1, 2003, Dr. Henceroth again examined plaintiff. Dr. Henceroth diagnosed plaintiff as suffering from  bone on bone contact with degenerative joint disease in the hip region.  Dr. Henceroth renewed the prescription for Voltaren and ordered plaintiff permanently assigned to a lower bunk.  Dr. Wray saw plaintiff on April 15, 2003, and April 21, 2003, for unrelated complaints.

_____

[3]Although the parties dispute whether Dr. Wray failed to give plaintiff a cane or whether plaintiff refused a cane, the record contains no evidence to suggest that plaintiff submitted any grievances with respect to the disputed fact.  Accordingly, plaintiff has failed to exhaust his administrative remedies, and therefore, this issue is not properly before this Court.

D.  Greenville Correctional Center

Plaintiff was transferred to Greensville Correctional Center on June 16, 2003.  On October 1, 2003, an x-ray of plaintiff's hip was performed, revealing old fractures of the hip.  The report noted that avascular necrosis could not be completely ruled out.

Plaintiff's treating physician at Greensville Correctional Center recommended that plaintiff receive a total hip replacement operation.  Defendant Dr. Gowan, the Statewide Medical Director for Prison Health Services, Inc., received this recommendation on December 11, 2003.  However, plaintiff's medical records and x-rays were not sent to Dr. Gowan.  Dr. Gowan requested that an MRI be performed to determine whether plaintiff had avascular necrosis and joint narrowing.  In Dr. Gowan's medical opinion, a hip replacement is necessary where there is avascular necrosis and joint narrowing.

An MRI was performed on January 10, 2004.  However, Dr. Gowan did not receive the MRI report until May 13, 2004.  The report stated that while the MRI did not show avascular necrosis, a plain film x-ray would better show such condition.  On May 14, 2004, Dr. Gowan inquired whether an x-ray had been taken as recommended in the MRI report.  On May 17, 2004, Dr. Gowan received the x-ray report from plaintiff's October 1, 2003 x-ray, which neither ruled out nor confirmed the possibility of avascular necrosis.  Dr. Gowan disapproved surgery and

recommended conservative treatment for plaintiff's condition.

Defendant Dr. Ohai, the Medical Director at Greensville Correctional Center, examined plaintiff on May 18, 2004. Dr. Ohai had an x-ray taken of plaintiff's hip. Dr. Ohai told plaintiff at that time that surgery could wait.

Plaintiff thereafter wrote to Fred Schilling, the Director of Health Services for the Virginia Department of Corrections, demanding an investigation into his medical treatment. Dr. Gowan received a copy of the letter on June 22, 2004. Dr. Gowan responded to plaintiff the next day and explained that he was directing that another x-ray be performed. On September 9, 2004, Dr. Gowan received the report of an x-ray that had been performed on plaintiff on May 18, 2004. According to the report, the x-ray revealed a narrowing of plaintiff's hip joint, but no avascular necrosis. Nevertheless, on September 14, 2004, Dr. Gowan approved plaintiff's surgery based on the narrowing of the joint. Plaintiff underwent total hip replacement surgery on November 24, 2004.

## II.  Procedural History

Plaintiff signed his Complaint on September 14, 2004, but the Court did not receive it until September 27, 2004. On October 25, 2005, plaintiff filed a Motion for a Preliminary Injunction, seeking surgery without delay. By Order entered November 18, 2004, the Court denied plaintiff's Motion for a

Preliminary Injunction and dismissed defendant Salyer because the statute of limitations barred plaintiff's claims against him. (Docket No. 7)

Defendant Nurse Stophel filed a Motion to Dismiss and a Motion for Summary Judgment.  She also submitted a Supplemental Motion to Dismiss, with attachments.  Leave of Court is required to file a Supplemental Motion to Dismiss.  As the supplemental motion contains evidence beyond the pleadings, it is appropriately construed as a supplement to her Motion for Summary Judgment. The Court will allow Nurse Stophel to supplement her Motion for Summary Judgment.  Accordingly, the Clerk is **DIRECTED** to file defendant Stophel's motion as a Supplement to her Motion for Summary Judgment.  Defendants Dr. Wray and Dr. Gowan filed separate motions for summary judgment.

Defendant Dr. Ohai is presumably unaware of this action. Plaintiff and the Court were unable to locate Dr. Ohai.  By Order entered April 13, 2005, the Court directed Dr. Gowan to provide a current address for Dr. Ohai.  Although Dr. Gowan is unaware of the current whereabouts of Dr. Ohai, he has informed the court that the last address he possesses for Dr. Ohai is Greensville Correctional Center, in Jarratt, Virginia.  However, he has advised the Court that Dr. Ohai resigned from his position at Greensville Correctional Center as well as his position with Prison Health Services in July 2004.  As Dr. Ohai has not been served and cannot be located, he is **DISMISSED** as a defendant in

this action without prejudice to plaintiff's right to bring suit against Dr. Ohai should plaintiff be able to locate him in the future.

In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), plaintiff was given an opportunity to respond to defendants' motions. Plaintiff was advised that failure to submit any materials in rebuttal could result in an adverse judgment based on defendants' motions and accompanying affidavits. Plaintiff responded to defendants' motions for summary judgment. On October 24, 2005, plaintiff filed a Motion for Summary Judgment in his behalf. Defendant Wray is the only defendant who has responded to plaintiff's motion in the allotted time. Accordingly, this action is ripe for judicial consideration.

### III. Principles of Summary Judgment

The standards courts apply in their consideration of motions for summary judgment are well-established. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Hunt v.

Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett,
477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 247 (1986); Seabulk Offshore, Ltd. v. Am. Home
Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Walton v.
Greenbrier Ford, Inc., 370 F.3d 446, 449 (4th Cir. 2004).

An otherwise proper summary judgment motion will not be
defeated by a mere factual dispute between the parties unless the
dispute concerns a "genuine issue of material fact." Anderson,
477 U.S. at 247-48; Bouchat v. Baltimore Ravens Football Club,
Inc., 346 F.3d 514, 519 (4th Cir. 2003). A "material fact" is a
fact that might affect the outcome of a party's case. See
Anderson, 477 U.S. at 248; JKC Holding Co. v. Wash. Sports
Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001); Commerce
Funding Corp. v. Worldwide Sec. Servs. Corp., 249 F.3d 204, 209
(4th Cir. 2001). Whether a fact is considered to be "material"
is determined by the substantive law, and "[o]nly disputes over
facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v.
Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue
concerning a "material" fact arises when the evidence is
sufficient to allow a reasonable jury to return a verdict in the
nonmoving party's favor. Anderson, 477 U.S. at 248; Commerce
Funding Corp., 249 F.3d at 209-10; Brinkley v. Harbour Recreation
Club, 180 F.3d 598, 614 (4th Cir. 1999).

Summary judgment shall be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; see also Hooven-Lewis, 249 F.3d at 265; Johnson v. Pearson, 316 F. Supp. 2d 307, 313 (E.D. Va. 2004). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004); McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718 (4th Cir. 2003); see Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Honor, 383 F.3d at 185; McLean, 332 F.3d at 718-19.

In meeting this burden, the nonmoving party must "go beyond the pleadings" and present affidavits or designate specific facts in depositions, answers to interrogatories, and admissions on file to establish a genuine issue of material fact. Celotex Corp., 477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir.

1993); Parker v. Westat, Inc., 301 F. Supp. 2d 537, 540 (E.D. Va. 2004).  Although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact.  See Anderson, 477 U.S. at 252; Matsushita, 475 U.S. at 586; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997); Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004).  The evidence presented must be such that a reasonable jury could find in favor of the nonmoving party.  Anderson, 477 U.S. at 252; Retail Servs. Inc. v. Freebies Publ'g, 364 F.3d 535, 542 (4th Cir. 2004); Tao of Sys. Integration, Inc., 330 F. Supp. 2d at 671.

Summary judgment is not a "disfavored procedural shortcut." Celotex Corp., 477 U.S. at 327; Sibley v. Lutheran Hosp. of Md., Inc., 871 F.2d 479, 483 n.9 (4th Cir. 1989); Brown v. Mitchell, 327 F. Supp. 2d 615, 628 (E.D. Va. 2004).  Rather, the summary judgment procedure is properly regarded as an "integral part" of the Federal Rules of Civil Procedure, which are designed to obtain a just, expeditious, and inexpensive resolution of every civil matter.  Celotex Corp., 477 U.S. at 327; Sibley, 871 F.2d

at 483 n.9; Graham v. Pactiv Corp. Benefits Comm., 301 F. Supp.
2d 483, 491-92 (E.D. Va. 2004).

IV.  Analysis

A.  Eighth Amendment Standard

Section 1983 emerged as the appropriate cause of action to
challenge unconstitutional actions by state officials by virtue
of the Supreme Court's ruling in Monroe v. Pape, 365 U.S. 167
(1961).  The Court extended this remedy to prisoners in Cooper v.
Pate, 378 U.S. 546 (1964), and Houghton v. Shafer, 392 U.S. 639
(1968).

A court's analysis of any § 1983 claim "begins by
identifying the specific constitutional right[s] allegedly
infringed by the challenged" actions.  Graham v. Connor, 490 U.S.
386, 394 (1989).  Courts use the Eighth Amendment to scrutinize
the medical treatment a prisoner receives in prison.[4]  Estelle v.
Gamble, 429 U.S. 97, 106 (1976).

To prove cruel and unusual punishment in violation of the
Eighth Amendment, plaintiff must satisfy a two-prong test that
has both an objective and a subjective component. Farmer v.

---

[4]In his complaint, plaintiff asserts that he was a pretrial
detainee for the time he was at Bristol City Jail, which raises a
claim under the Fourteenth Amendment rather than the Eighth
Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 (1979).  However,
plaintiff's claims against defendant Salyer, which related to
plaintiff's incarceration at Bristol City Jail, have been
dismissed.  Plaintiff's remaining claims arose after his April
26, 2002 conviction for car jacking.  Therefore, as a convicted
inmate, plaintiff's claims arise under the Eighth Amendment. Id.

Brennan, 511 U.S. 825, 834 (1994).  The first prong, which is an objective inquiry, asks whether the deprivation alleged is "sufficiently serious."  Id.; Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The second prong, a subjective inquiry, requires the inmate to demonstrate that the prison officials acted, at a minimum, with "deliberate indifference" toward his or her needs. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 302-03.  This subjective prong requires more than negligent conduct. Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Whitley v. Albers, 475 U.S. 312, 319 (1986).  For medical cases, the first component is satisfied by showing that the inmate had a serious medical condition, and the second component is satisfied by proving that the prison officials acted with deliberate indifference. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

A serious medical need, sufficient to meet the objective component, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Coppage v. Mann, 906  F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987)).  A medical need also becomes serious if the denial of or delay in treatment causes the inmate to "suffer a life-long handicap or permanent loss."  Id.;

see also Hill v. DeKalb Req'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994).

When, as in the instant case, an inmate alleges that the delay in treatment is the constitutional deprivation, "the objective seriousness of the deprivation should be measured 'by reference to the effect of delay in treatment.'" Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (quoting Hill, 40 F.3d at 1188) (emphasis in Hill). Thus, an inmate who complains that delay in medical treatment is the constitutional violation "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188. In addition, the "[t]olerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." Id. (quoting Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994)) (alterations in original). Accordingly, delay in medical treatment claims must be "interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." Id. at 1189.

With respect to the second prong of the cruel and unusual punishment test - deliberate indifference to inmate health or safety - a plaintiff must show that the prison official knew of and disregarded an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837. The official must "both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.  A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844.  Mere malpractice or negligence in diagnosis or treatment is insufficient to state a constitutional claim.  See Estelle, 429 U.S. at 105-06; Miltier, 896 F.2d at 852.

        The subjective, deliberate indifference component involves a determination by the court of whether the prison official had a sufficiently culpable state of mind.  Wilson, 501 U.S. at 297. In Farmer, the Supreme Court looked to the subjective state of mind of the prison official:

> [A] prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane
> conditions of confinement unless the official knows of
> and disregards an excessive risk to inmate health or
> safety; the official must both be aware of facts from
> which the inference could be drawn that a substantial
> risk of serious harm exists, and he must also draw that
> inference.

511 U.S. at 837; see also Taylor v. Freeman, 34 F.3d 266, 271 (4th Cir. 1994).

        In Estelle v. Gamble, 429 U.S. 97, the Supreme Court identified three circumstances where prison officials may be found to violate the Eighth Amendment: (1) prison doctors are indifferent toward a prisoner's medical needs; (2) employees

intentionally deny or delay an inmate's access to medical care; and (3) prison employees intentionally interfere with prescribed treatment.  Id. at 104-05.

B.  Discussion

Each defendant treated plaintiff at a different facility and at different times.  As a result, the facts with respect to each defendant necessarily differ.  The Court therefore will discuss each defendant separately.

1.  Defendant Nurse Stophel

Plaintiff claims that Nurse Stophel never allowed him to be treated by the doctor.  However, plaintiff did not make a request to see the doctor until October 23, 2002, and he was seen that same day.  Plaintiff appears to suggest that Nurse Stophel should have acted as his conceirge and taken the initiative to make an appointment for plaintiff because he complained of feeling poorly.

Plaintiff's claim is untenable.  Plaintiff merely had to request to see the doctor.  Certainly plaintiff has the ability to determine when he requires medical attention.  In fact, plaintiff did determine that he needed to see the doctor on October 23, 2002, and he received immediate medical care.

Plaintiff also complains that Nurse Stophel required that he pay for his own medical care at the Washington County Jail.

Plaintiff disputes that his condition resulted from the motor vehicle accident that occurred prior to his incarceration, and insists it occurred as a result of his struggle to maintain his balance when carrying the buffing machine at Bristol City Jail.

Assuming, as we must, that plaintiff's injury in fact resulted from the incident at Bristol City Jail, Nurse Stophel's payment decision does not rise to the level of a constitutional violation.  At most, it was merely a mistake.  Moreover, it is clear that plaintiff was not denied medical care.  Plaintiff received medications and was seen by a doctor when he requested to be seen.  The fact that plaintiff was required to pay for these services is not a matter of constitutional significance. See Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 408 (9th Cir. 1985); Johnson v. Dep't. of Pub. Safety & Corr Servs., 885 F. Supp. 817, 820 (D. Md. 1995).  Likewise, if plaintiff chose to forego medical treatment so as to avoid paying for that treatment, he merely made the same choice that many non-incarcerated patients must make.

Plaintiff has failed to establish an Eighth Amendment violation.  Accordingly, Nurse Stophel's Motion for Summary Judgment is **GRANTED.**


2.   Defendant Dr. Wray

Plaintiff claims that Dr. Wray exhibited deliberate indifference to his medical needs because Dr. Wray treated

plaintiff with pain medications that did not relieve all of
plaintiff's pain.  Plaintiff also claims that Dr. Wray exhibited
deliberate indifference by treating the condition diagnosed,
degenerative joint disease, rather than treating plaintiff's
claimed condition.  However, plaintiff fails to indicate what the
preferred treatment should have been.  Plaintiff further
complains that he needed pain medication, but was prescribed the
wrong medications.  However, Dr. Henceroth, not Dr. Wray,
prescribed the medications that plaintiff received.

Dr. Henceroth diagnosed plaintiff with degenerative joint
disease which, by its nature, becomes progressively worse.  The
medical records indicate that plaintiff was treated for pain and
degenerative joint disease, as well as unrelated complaints.
Almost two years later, plaintiff was diagnosed with narrowing of
the joint.  There is no indication that this condition existed at
the time plaintiff was at Mecklenburg Correctional Center.  Even
if the claimed condition did exist, there is no evidence to
suggest that Dr. Wray was aware of an alleged need for surgery at
that time.  Moreover, Dr. Wray authorized plaintiff's examination
by an orthopedic surgeon, who prescribed plaintiff's course of
treatment. Plaintiff's claim at most raises the possibility of
negligence and misdiagnosis.  However, mere malpractice or
negligence in diagnosis or treatment does not state a
constitutional claim.  See  Estelle, 429 U.S. at 105-06; Miltier,
896 F.2d at 852.  Accordingly, because plaintiff has failed to

establish an Eighth Amendment violation, Dr. Wray's Motion for
Summary Judgment is **GRANTED**.


    3.  <u>Defendant Dr. Gowan</u>

On December 11, 2003, Dr. Gowan received a request for
approval of a total hip replacement for plaintiff.  The request
was made by plaintiff's treating physician at the Greensville
Correctional Center.  There is no doubt that by the time Dr.
Gowan became involved, plaintiff had a serious medical condition.
Plaintiff claims that Dr. Gowan delayed plaintiff's surgery,
causing plaintiff unnecessary pain.  Further, plaintiff claims
that Dr. Gowan exposed plaintiff to excessive amounts of x-rays.[5]
Plaintiff does not claim that he suffered any injury as a result
of receiving multiple x-rays.

Plaintiff relies on the x-ray report from October 2003 to
support his claim that the need for surgery was obvious.
However, the x-ray report only states that there is a possibility
that plaintiff suffers from avascular necrosis, and that this
condition could not be ruled out.  Contrary to plaintiff's
assertion, this is not a definitive diagnosis.

The record reveals that once Dr. Gowan received an x-ray
report showing joint narrowing, he approved plaintiff's surgery
less than one week later.  There is nothing in the record to

_____

[5]The record clearly shows that Dr. Gowan was not aware of
the May 18, 2004 x-ray, when he ordered an x-ray to be conducted
on July 23, 2004.

support plaintiff's contention of deliberate indifference.[6] Each time that Dr. Gowan received a request or complaint from plaintiff, he responded quickly.

When an inmate alleges that the delay in treatment is the constitutional deprivation, "the objective seriousness of the deprivation should be measured 'by reference to the effect of delay in treatment.'" Crowley, 109 F.3d at 502.  Thus, an inmate who complains that delay in medical treatment is the constitutional violation "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  Hill, 40 F.3d at 1188. Undoubtedly, plaintiff continued to experience pain prior to the surgery; however, he was treated for pain as well as for degenerative joint disease, which is by nature a condition that gradually worsens.  Plaintiff has failed to offer any medical evidence to show that the surgery was necessary at any time prior to when it was approved.  Moreover, plaintiff has failed to produce verifying medical evidence to show that the delay in receiving surgery caused him any harm.  Plaintiff does not suggest that the surgery was any less successful because of the delay.

As evidence of deliberate indifference, plaintiff asserts that he received a hip replacement only because he filed this

---

[6]Dr. Gowan did not receive the May 18, 2004 x-ray report until September 9, 2004.  The delay in approval resulted from a lack of information being available to Dr. Gowan.

action.  However, Dr. Gowan approved surgery on September 14, 2004.  Plaintiff signed his Complaint on September 14, 2004, and the Court received the Complaint on September 27, 2004. Defendants received notification of this action on November 18, 2004.  Therefore, the suggestion that Dr. Gowan only granted surgery because plaintiff filed this action is totally unsupported by the facts.  Nothing in the record indicates that Dr. Gowan was deliberately indifferent to plaintiff's serious medical needs.  Therefore, plaintiff has failed to meet the subjective component of his deliberate indifference claim. Accordingly, Dr. Gowan's Motion for Summary Judgment is **GRANTED.**

## V. <u>Conclusion</u>

For the aforementioned reasons, the Court **GRANTS** defendants' motions for summary judgment, and **DENIES** plaintiff's Motion for Summary Judgment.  This action is **DISMISSED WITH PREJUDICE.**

Plaintiff is advised that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within thirty (30) days from the date of this Opinion and Final Order.  If plaintiff wishes to proceed <u>in</u> <u>forma</u> <u>pauperis</u> on appeal, the application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street,

Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Opinion and

Final Order to plaintiff and counsel for defendants.

IT IS SO **ORDERED**.


_____/s/_____
WALTER D. KELLEY
UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
March 21, 2006